**NOT FOR PUBLICATION**

```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
                                          :
WINSTON KNAUSS,                           :
                                          : CIVIL ACTION NO. 01-3662 (MLC)
       Plaintiff,                         :
                                          :      MEMORANDUM OPINION
       v.                                 :
                                          :
SOLOMON DWEK,                             :
                                          :
       Defendant.                         :
                                          :
```

**COOPER, District Judge**

The plaintiff, Winston Knauss ("Knauss"), brings this action under 46 U.S.C. § 31303, et seq. (the "Ship Mortgage Act"), for a deficiency judgment along with interest and costs against the defendant, Solomon Dwek ("Dwek"). The Court, following a bench trial, held that Knauss is legally entitled to a deficiency judgment. (11-21-05 Mem. Op. & Ord.) The Court now awards Knauss $1,139,132.97.

## BACKGROUND

The parties are familiar with the background of this action. (See 11-21-05 Mem. Op. & Ord., at 1-7; 10-22-03 Mem. Op. & Ord., at 1-4.) Camelot Casino Cruises, Inc. ("Camelot") purchased from Knauss, in December 1998, a vessel named the "Sir Winston" a/k/a "Excalibur," later known as the "Canaveral Star" ("the Ship"). (11-21-05 Mem. Op. & Ord., at 1.) Dwek was the principal owner of Camelot, and executed a First Preferred Ship's Mortgage ("the Mortgage") on the Ship, securing Camelot's obligation on the

repayment of a debt of $950,000.  (Id. at 2.)  Dwek signed the Mortgage and accompanying promissory note ("the Note") as a personal guarantor.  (Id.)  Camelot defaulted on the Mortgage, and sold the Ship to Bernie Weintraub.  (Id.)  Weintraub also defaulted, and Knauss instituted an in rem foreclosure action against the Ship in the United States District Court for the Southern District of Florida ("the Florida court").  (Id.)  Following a court order, the Ship was sold for $645,000 at an auction conducted by the United States Marshal's Service.  (Id.)  Knauss brought an action in this Court seeking a deficiency judgment from Dwek.  Knauss seeks to recover the difference between the proceeds received from the sale of the Ship, and the amount owed on the Mortgage.

   This Court, applying federal law, and where necessary, Florida law, has held that (1) Knauss is legally entitled to seek a deficiency judgment against Dwek, (2) Dwek is liable for the remainder of the debt under the Mortgage, and (3) Knauss is not equitably estopped from collecting a deficiency judgment from Dwek.  (11-21-05 Mem. Op. & Ord.; 10-22-03 Mem. Op. & Ord.)  Knauss has submitted a proposed judgment in response to a Court order.  (11-21-05 Mem. Op. & Ord.)  The Court conducted oral argument on March 10, 2006, and has reviewed the damages submissions of both Knauss and Dwek.

**DISCUSSION**

Knauss seeks judgment in his favor in the amount of $1,135,349.36.  (2-24-06, McMahon Certif. Ex. C.)  This figure is the sum of (1) $657,066.63, the principal balance owed on the Mortgage and the Note, (2) $267,503.89 in accrued interest,[1] and (3) $210,778.84 in attorney fees and costs.  (Id.)  Dwek argues that Knauss's judgment calculation should be reduced because (1) Dwek is entitled to a fair value offset on the mortgage deficiency, (2) interest should be calculated pursuant to the statutory rate, not the contract rate, and (3) the attorney fees request is too high.  (Dwek Damages Submission, at 5, 7, 8.)

**I.   The Mortgage Deficiency**

Knauss seeks $657,066.63 from Dwek to cover the deficiency between (1) $407,193.27, the amount received by Knauss for the sale of the Ship, and (2) $1,064,259.90, the amount owed by Dwek on the Note.[2]  Dwek disputes neither the net amount Knauss received from the sale, nor the amount owed on the Note.  Dwek

---

[1] This figure represents accrued interest as of March 10, 2006.  The final award will be adjusted to include any additional interest accrued between March 10, 2006, and the date judgment is entered.

[2] The Ship was sold at a United States Marshal's Public Auction on February 12, 2002 for $645,000.  Marshal's fees, commissions, and expenses related to personal injury claims tied to the Ship were deducted from the gross sale price.  (Knauss Damages Submission, at 21.)  The net amount Knauss received from the sale was $407,193.27.  (9-13-02, Order, Knauss v. M/V Canaveral Star, No. 00-7779 (S.D. Fla.).)

argues, however, that he is entitled to a fair value offset to account for the disparity between the sale price of the Ship, and the Ship's fair market value. (Dwek Damages Submission, at 5.)

Dwek asserts that the fair market value of the Ship is $1.8 million, or at minimum $1.6 million. (Id. at 4.) He is not seeking an evidentiary hearing on the fair market value, but contends that prior appraisals of the Ship, and the "questionable conduct surrounding the lack of notice to Dwek" indicate that the sale price of the Ship does not reflect a genuine market price. (Id. at 6-7.) Knauss, in reply, argues that Dwek has waived the right to seek a fair value offset. (Knauss Reply, at 8.) At oral argument, Dwek asserted that he preserved his right to seek a fair value offset in the Final Pretrial Order.

**A.   Fair Market Offset**

Knauss's failure to provide Dwek notice of the sale of the Ship, and Dwek's reliance on Knauss's representations regarding the Ship's sale price do not entitle Dwek to a fair market offset. The propriety of the sale price of the Ship has already been pleaded by the defendant, and decided by both this Court and the Florida court. (See 11-29-04, Final Pretrial Order, at 26; 11-21-05 Mem. Op. & Ord., at 7; 4-10-02 Order, Knauss v. M/V Canaveral Star, No. 00-7779 (S.D. Fla.).) This Court determined that Knauss's conduct related to the potential private sale of the Ship, and the subsequent Marshal's sale did not equitably

4

estop Knauss from seeking a deficiency judgment.  (11-21-05 Mem. Op. & Ord., at 1.)  Knauss "had no duty to provide Dwek with notice of the judicial sale as a condition precedent to seeking a deficiency judgment," and any reliance by Dwek on the alleged misrepresentations of Knauss was unreasonable.  (Id. at 11-12.)  The Court, therefore, will not apply a fair value offset to the deficiency judgment assessed against Dwek based on Knauss's conduct.

   The Florida court, in the foreclosure action, also confronted and confirmed the price and value of the Ship.  After the Marshal's sale, Dwek, though not a party to the action, objected to the confirmation of the sale.  (4-10-02 Order, Knauss v. M/V Canaveral Star, No. 00-7779 (S.D. Fla.).)  The Florida court determined, and this Court agrees, that the $645,000 sale price is not grossly inadequate and does not shock the conscience.  Id.  The Florida court acknowledged that the Ship had twice been appraised at $1.6 million, but noted that the appraisals reflected an expected sale price in a competitive and open market, not a forced Marshal's sale.  Id. at 2.

   "[M]arket value . . . has no applicability in the forced-sale context; indeed it is the very antithesis of forced-sale value . . . fair market value presumes market conditions that, by definition, simply do not obtain in the context of a forced sale."  BFP v. Res. Trust Corp., 511 U.S. 531, 538 (1994)

(emphasis in original).³  An appraiser might be able to assess a property's worth if it did not have to be sold in the context of a foreclosure sale, "but property that must be sold within those strictures is simply worth less."  Id. at 539 (emphasis in original).

"Deficiency judgment suits should not be turned into valuation cases" in the absence of a preliminary showing of disparity between a property's sale price and the property's fair value.  Walter E. Heller & Co. v. O/S Sonny V., 595 F.2d 968, 972 (5th Cir. 1979).  "The fairness of the public sale price of a vessel is therefore left to the equitable discretion of the district court."  Id. at 971.

**B.   The Value of the Ship**

The Court here finds that the requisite disparity between the sale price and the fair value of the Ship has not been shown.  The appraisals of the Ship do not reflect the Ship's value at a forced sale.  The appraisal figures must be adjusted downward to account for the circumstances of the sale.  (See 4-10-02 Order,

---

³ "The market value of an article or piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desire to buy but is not compelled to take the particular article or piece of property."  BLACK'S LAW DICTIONARY 971 (6th ed. 1990); see also BFP, 511 U.S. at 538.

6

Knauss v. M/V Canaveral Star, No. 00-7779 (S.D. Fla.).) "[T]he only legitimate evidence of the property's value at the time it is sold is the foreclosure-sale price itself." BFP, 511 U.S. at 538. The Court need not look at the disparity with heightened scrutiny because a third party, not Knauss himself, purchased the Ship at the sale. See, e.g., Heller, 595 F.2d at 972 n.2; Enserco, L.L.C. v. Drilling Rig Noram 253, 126 F.Supp.2d 443, 446 (S.D. Tex. 2000) (noting that the need for heightened scrutiny arises when property is sold to the foreclosing creditor, not a third party).

The Ship was placed on the market for sale at the fair market value for a period of ninety days. (10-22-03 Mem. Op., at 4.) No private sale took place, and the Ship was sold at the Marshal's sale. (Id.) The Marshal's office published notice of the date, place, and time of the auction, and advertised the auction in a boating magazine. (11-21-05 Mem. Op., at 6.) There has been no allegation of fraud or collusion. First Nat'l Bank of Jefferson v. M/V Lightning Power, 776 F.2d 1258, 1261 (5th Cir. 1985) (noting that absent fraud or collusion a judicial sale bid should not be rejected unless the price "is so grossly inadequate as to shock the conscience"). The auction was properly advertised, properly conducted, and the resulting price was $645,000.

Dwek, in his challenge to the confirmation of the sale, proposed a bid of $950,000 to $1.2 million. (4-10-02, Order, Knauss v. M/V Canaveral Star, No. 00-7779, (S.D. Fla.).) This factor weighs against a fair market offset because the bid is indicative of Dwek's ability to financially protect himself, and pay the debt owed. See U.S. v. Caprice, 427 F.Supp. 1031, 1034 (D.N.J. 1974) (noting that one criterion that must be shown to justify a fair value offset is the inability of the borrower to pay the debt or to protect himself at the foreclosure sale). Finally, the Court recognizes the interests of public policy. "The highest bidder at a fairly conducted judicial sale should be able to take advantage of a bargain." Latvian Shipping Co. v. Baltic Shipping Co., 99 F.3d 690, 694 (5th Cir. 1996) (reversing district court's order denying confirmation of the sale of a ship, noting that the difference between the high bid of $3.7 million and proposed upset bid of $4.7 million was not grossly inadequate as to shock the conscience). In an action under the Ship Mortgage Act, to allow a fair value offset without a significant disparity in the sale price and fair value "would upset the Congressional design of just and speedy enforcement of mortgagees' rights," and limit public confidence in judicial sales. Heller, 595 F.2d at 972; Latvian Shipping Co., 99 F.3d at 694.

**II.  Prejudgment Interest Rate**

Knauss seeks prejudgment interest on the mortgage deficiency at the rate of ten percent per annum.  This is the rate agreed to by Knauss and Dwek in the Note.  Knauss proposes that the interest should accrue from February 12, 2002, the date of the Marshal's sale, through the date of this judgment.  (Knauss Damages Submission, at 14, 23.)  Dwek argues that (1) the contractual rate of interest is no longer determinative because upon foreclosure of the Ship, the Mortgage and the Note merged with the judgment of the Florida court, and (2) the Court instead should look to the federal standard regarding postjudgment interest outlined in 28 U.S.C § 1961 for guidance as to the proper rate of prejudgment interest.  (Dwek Damages Submission, at 7, 11.)

Knauss, in reply, argues that (1) Dwek has waived his right to assert merger because merger is an affirmative defense that should have been raised in prior proceedings, and (2) merger is inapplicable.  (Knauss Reply, at 8, 17.)  Dwek, at oral argument, stated that he preserved his right to assert merger as a defense in the Final Pretrial Order.  A footnote in the Final Pretrial Order provides: "[d]efendant also reserves the right to add additional legal issues pertaining to damages after the conclusion of the trial on liability."  (11-29-04 Final Pretrial Order.)

### A.     The Legal Standard

"The postjudgment interest rate specified in 28 U.S.C. § 1961 (1982) does not by its own operation apply to prejudgment interest." Sun Ship Inc. v. Matson Nav. Co., 785 F.2d 59, 63 (3d Cir. 1986). In federal question cases, the district court has discretion to set the rate of prejudgment interest. Id.; see also Taxman v. Bd. of Educ., 91 F.3d 1547, 1566 (3d Cir. 1996). In federal cases based on diversity jurisdiction, the court should apply state law to determine the rate of prejudgment interest. Jarvis v. Johnson, 668 F.2d 740, 746 (3d Cir. 1982).

The parties to this action are diverse. The Court, however, will not look to the state standards for prejudgment interest because this is an action for a deficiency judgment under a federal statute. See Sun Ship Inc., 785 F.2d at 63 (recognizing that the parties were diverse, but applying federal law regarding prejudgment interest because the action was to confirm an award made pursuant to federal law); Heller, 595 F.2d at 971 (recognizing that questions concerning deficiency judgment and judicial sale procedures are governed by federal law). The Ship Mortgage Act provides that a preferred mortgage may have any rate of interest to which the parties agree. 46 U.S.C. § 31322(b). The Court, therefore, will apply the contract rate of interest, ten percent, to the amount of the deficiency.

### B. The Merger Doctrine

Consideration of the merger doctrine does not change the Court's determination. The terms of the mortgage are no longer applicable when a foreclosure judgment is rendered on the mortgage because the terms are merged into the judgment. Stendardo v. Fed. Nat'l Mortg. Ass'n, 991 F.2d 1089, 1095 (3d Cir. 1993). Parties to a mortgage, however, may continue to rely upon the provisions of the mortgage postjudgment when the mortgage "clearly evidences their intent to preserve the effectiveness of that provision post-judgment." Id.; In re A&P Diversified Tech., No. 04-3622, 2006 WL 133492, at *3 (3d Cir. Jan. 19, 2006); see also Mid-Jersey Nat'l Bank v. Fid.-Mortg. Investors, 518 F.2d 640, 645 (3d Cir. 1975) (diversity action applying New Jersey law, but recognizing that "for the rate of pre-judgment interest to be equitable it should reflect the rate fixed by the parties in an arm's length transaction").

The Court, assuming arguendo, that Dwek did not waive the defense of merger, finds that the language of the Mortgage and the Note evidence the parties' intent to apply the contracted for rate of interest to any judgment. The Mortgage provides:

> [i]n the case of declaration of default and demand for payment in full, or after maturity of the Promissory Note the unpaid balance shall bear interest at the interest rate applicable under the Promissory Note. In the case of a judgment, interest on the unpaid balance of the judgment will be payable at the rate of interest applicable under the Promissory Note.

11

(Jt. Ex. 1, First Preferred Ship's Mortgage.)  The Note in relevant part provides: "[t]his note and deferred interest payments shall bear interest at the rate of 10% per annum from maturity until paid," and "this note shall bear interest at the rate of 10% per annum during any period of default."  (Jt. Ex. 2, Promissory Note.)  The Court finds that the language of the Mortgage contemplates both a judgment award, and the interest rate that would apply to that judgment.  The rate of prejudgment interest to be applied to the amount of the deficiency ($657,066.63), therefore, is set at ten percent per annum to accrue from February 12, 2002, through the date of this judgment.

**III. Attorney Fees**

Knauss seeks attorney fees and costs in the amount of $210,778.84.[4]  The court may award attorney fees when, <u>inter alia</u>, a contract provides for the payment of such fees. <u>Cityside Archives, Ltd. v. N.Y.C. Health & Hosp. Corp.</u>, 37 F.Supp.2d 652, 656-57 (D.N.J. 1999).  It is within the Court's discretion to fix the amount of fees and costs, if the Court (1) employs the correct standards and methods in reaching the decision, and (2)

---

[4] This figure represents fees and costs incurred in the present litigation only.  It does not account for any costs incurred in the litigation in the Florida court.  (Knauss Damages Submission, at 10.)  The fees are owed to (1) Kent and McBride P.C. in the amount of $41,131.62 for services rendered between January 26, 2001 and March 16, 2004, and (2) Lum, Danzis, Drasco & Positan, LLC in the amount of $169,647.22 for services rendered between April 12, 2004 and September 7, 2005.  (McMahon Certif., Ex. A.)

makes findings of fact that are not clearly erroneous.  See, e.g., Interfaith Cmty. Org. v. Honeywell Int'l, 426 F.3d 694, 703 n.5 (3d Cir. 2005); Loughner v. Univ. of Pitt., 260 F.3d 173, 177 (3d Cir. 2001); Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist., 152 F.3d 228, 232 (3d Cir. 1998); Abrams v. Lightolier Inc., 50 F.3d 1204, 1222 (3d Cir. 1995).  "A reasonable attorney's fee is one that compensates a lawyer for the fair market value of his time, experience, and effort."  Hall v. Bor. of Roselle, 747 F.2d 838, 841 (3d Cir. 1984).  A reasonable fee is also one which is "adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys."  Student Pub. Int. Res. Group of N.J. v. AT&T Bell Labs., 842 F.2d 1436, 1448 (3d Cir. 1998) (internal quotes and cite omitted).

     The opposing party has the burden to challenge the reasonableness of the requested fee, by affidavit or brief, with sufficient specificity to give notice.  Bell v. United Princeton Props., Inc., 884 F.2d 713, 715 (3d Cir. 1989).  A court cannot "decrease a few award based on factors not raised at all by the adverse party."  Id. at 720; Rode v. Dellaciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  A court, however, should evaluate a fee request in light of any objections.  Loughner, 260 F.3d at 179.

     Dwek acknowledges that (1) the Court has broad discretion to award attorney fees, and (2) "[p]laintiff's counsel is very much qualified and reputable and thus we do not review his entries or

13

rate." (Dwek Damages Submission, at 8, 10.) Dwek argues, however, that Knauss's recovery of attorney fees should be limited because of (1) "plaintiff's questionable conduct with respect to the sale," (2) the decision to bifurcate his remedies, and (3) counsel's failure to delegate work to associates that bill at a lower rate. (Id. at 9, 11.)

The equitable concerns regarding Knauss's conduct related to the sale of the Ship have been addressed by the Court in prior decisions. (See Discussion, at I. The Mortgage Deficiency.) The conduct is not pertinent to the assessment of attorney fees here. Dwek does not review the entries or rates of Knauss's counsel, and the Court will not decrease a fee award based on factors not raised by the adverse party.

The Mortgage provides for the award of attorney fees stating:

> I [mortgagor] agree to pay any late charges that become due under the Promissory Note, attorney fees, court costs, and any other expenses, losses, charges, or damages incurred or advances made by you the Mortgagee in the prosecution of it's rights or caused by the Owner's default herein under or under the Promissory Note.

(Jt. Ex. 1, First Preferred Ship's Mortgage.) The Note similarly provides, "[e]ach maker and endorser further agrees, jointly and severally, to pay all costs of collection, including attorney's fees in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof." (Jt. Ex. 2, Promissory Note.) The Court,

14

therefore, finds that the parties intended to provide for the award of legal fees in the Mortgage. The rates assessed, and time spent by Knauss's counsel were reasonable and the Court awards the fees requested.

## IV.  Supersedeas Bond

Dwek requests that the Court (1) fix an amount for a supersedeas bond pursuant to Federal Rule of Civil Procedure ("Rule") 62(d), and (2) refrain from entering a judgment to accompany this opinion for fourteen days. (Dwek Damages Submission, at 13.) Knauss argues that the Court should enter a judgment and opinion together, and that he will "voluntarily refrain from executing upon the Judgment for a period of fourteen (14) days subsequent to its entry." (Knauss Reply, at 27.) At oral argument Knauss stated that he would extend his offer to refrain from executing judgment to twenty-one days. If the Court does set an amount for the bond, Knauss requests that the bond be set at the full amount of the judgment plus eighteen months interest at the contract rate to cover the time needed for Dwek's appeal to be decided. (Id.)

The Court will not delay the entry of the judgment because no execution upon the judgment can take place for ten days after the entry thereof. Rule 62 provides that "no execution shall issue upon a judgment, nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry."

Fed.R.Civ.P. 62(a). The Court, however, will fix the amount of a supersedeas bond. Rule 62(d) further provides:

> [w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay . . . The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Fed.R.Civ.P. 62(d). The amount of a supersedeas bond is not specified in Rule 62(d), but the predecessor to Rule 62(d) indicated that the amount of the bond should be fixed to satisfy the judgment in full, plus interest, costs, and damages for delay. U.S. v. Kurtz, 528 F.Supp. 1113, 1114-15 (E.D. Pa. 1981); see also Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres Inc., 87 S.Ct. 1, 3 (1966); Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979). The Court fixes the bond amount to be the full amount of the judgment plus eighteen months interest at the postjudgment rate specified in 28 U.S.C. § 1961. Knauss, consistent with his offer, shall refrain from executing the judgment for twenty-one days from the date judgment is entered to allow Dwek time to secure a bond if he chooses.

## **CONCLUSION**

The Court for the reasons stated supra, will enter judgment in favor of Knauss in the amount of $1,139,132.97. The judgment is the sum of (1) $657,066.63, the balance due on the Note, (2)

$271,287.50 in interest accrued from February 12, 2002 through the date of this judgment at the rate of ten percent per annum, and (3) $210,778.84 in attorney fees and costs.  The Court also sets the amount of a supersedeas bond in this matter to be the total amount of the judgment plus eighteen months interest at the postjudgment rate stated in 28 U.S.C § 1961.  The Court will issue an appropriate order and judgment.

                                                                     s/ Mary L. Cooper
                                                               **MARY L. COOPER**
                                                               United States District Judge